**Lansalot A. OLGUIN,
Plaintiff-Appellant,**

v.

**INSPIRATION CONSOLIDATED
COPPER COMPANY, et al.,
Defendants-Appellees.**

**No. 83-2366.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1984.

Decided Aug. 21, 1984.

David F. Gomez, Van O'Steen & Partners, Phoenix, Ariz., for plaintiff-appellant.

Jon E. Pettibone, Lewis & Roca, Phoenix, Ariz., for defendants-appellees.

Before WISDOM *, WALLACE, and ANDERSON, Circuit Judges.

* Senior Circuit Judge of the Court of Appeals for the Fifth Circuit, sitting by designation.

1. *Local 926, International Union of Operating Engineers v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368, 375, quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 239, 79 S.Ct. 773, 776, 3 L.Ed.2d 775 (1959).

2. On May 21, 1980, Olguin was issued a warning for leaving his work area; the Union filed a grievance on May 28. On November 26, 1980, Olguin was issued a written warning for damaging a burning torch; the Union filed a grievance

WISDOM, Senior Circuit Judge:

In yet another "variant of a familiar theme" [1] we are called upon to decide if the plaintiff's state law tort and contract claims were properly removed to federal court and dismissed because they were preempted by federal labor law. The plaintiff's complaint was carefully worded to avoid any direct reference to the collective bargaining agreement that controlled his employment, but the district court found nevertheless that the plaintiff in reality alleged violations of that agreement. The district court dismissed the complaint. We affirm.

## I.

Lansalot Olguin was employed as a welder for seven and a half years by the Inspiration Consolidated Copper Company's mine in Inspiration, Arizona. He was a member of a collective bargaining unit represented by Local 187 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO. A collective bargaining agreement established the terms and conditions of employment. The agreement gave the employer "the right to discharge or otherwise discipline employees for just cause"; the agreement also provided for a grievance and binding arbitration procedure to resolve disputes.

Inspiration disciplined Olguin four times during 1980 and 1981.[2] On the last occasion, on March 15, 1981, the company discharged him. He filed a grievance on each occasion but the Union took none to arbitration. Immediately after he was dis-

on December 1. On February 11, 1981, Olguin was suspended for five days for poor work performance; the Union filed a grievance the next day, stating that Olguin's foreman had repeatedly harassed him. On March 15, 1981, the company discharged Olguin for misusing and damaging a saw without reporting the damage. The grievance, filed the next day, contended that Olguin "may be guilty of an error of judgment" but that there was no just cause for dismissal. The grievance again asserted that Olguin was the victim of a planned series of disciplinary actions.

charged Olguin filed a discrimination complaint with the Mine Safety and Health Administration (MSHA), alleging that he was discharged for filing a safety complaint with the MSHA. On August 27, 1981, Olguin also filed an unfair labor practice charge with the NLRB, alleging that he was discharged for union and protected concerted activities. After an investigation the Regional Director refused to issue a complaint because of "a lack of sufficient evidence" that Olguin's discharge had been retaliatory, and because the NLRB had a practice of deferring to the MSHA on retaliatory discharge complaints arising out of safety complaints. On November 18, 1981, the NLRB Office of General Counsel denied Olguin's appeal. In March 1982 the MSHA concluded that Olguin had not been subjected to discrimination in retaliation for his safety complaint. Olguin then pursued his administrative remedies by filing a complaint before the Federal Mine Safety and Health Review Commission (FMSHRC). In March 1983 Inspiration agreed to pay Olguin $1,000 in settlement of the FMSHRC complaint.

At this point the dispute moved to the courts. Olguin filed a complaint in Arizona Superior Court on March 9, 1983. The complaint alleged four causes of action under Arizona law: wrongful discharge; wrongful discharge in violation of public policy; intentional infliction of emotional distress (outrage); and breach of contract. The complaint omits any mention of the collective bargaining agreement, and relies instead on state tort law, an alleged agreement between Olguin and Inspiration, and (in the second count) on "public policy" as manifested in the National Labor Relations Act and the Federal Mine Safety and Health Act.

Inspiration removed the case to federal court on the ground that Olguin's causes of action arose not under state law but under federal labor law. Olguin moved to remand the proceedings to state court. In August 1983 the district court denied the motion of remand and granted summary judgment. The court found that no material facts were disputed, that the claims all arose under federal law, and that federal law provided exclusive remedies. Because Olguin had failed to follow the procedures provided by the collective bargaining agreement, the court dismissed his complaint.

## II.

■ The federal courts have original jurisdiction of any action "arising under" a federal law regulating commerce. 28 U.S.C. § 1337 (1982). Federal question jurisdiction has been the subject of extensive judicial and academic discussion, as courts and commentators have attempted to evolve workable and justifiable principles out of doctrines "involving perhaps more history than logic".[3] *See Powers v. South Central United Food & Commercial Workers Unions,* 719 F.2d 760, 763 n. 1 (5th Cir.1983) (collecting cases and authorities). The firmest of these historical doctrines is the "well-pleaded complaint" rule. The Supreme Court has repeatedly held that for federal question jurisdiction to exist "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action". *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *see Franchise Tax Board v. Construction Laborers Vacation Trust,* 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420, 430–32 (1983); *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Under the well-pleaded complaint rule, federal jurisdiction is not created when the plaintiff's cause of action is preempted by federal law, because preemption is a *defense,* not an element of the complaint.[4] This is so even if both parties agree that the only

---

**3.** *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, ——, 103 S.Ct. 2841, 2843, 77 L.Ed.2d 420, 427 (1983).

**4.** This Court has recognized the continuing validity of this rule in, *e.g., Garibaldi v. Lucky*

*Food Stores, Inc.,* 726 F.2d 1367, 1370 (9th Cir. 1984); *Nalore v. San Diego Federal Savings and Loan Ass'n,* 663 F.2d 841, 842 (9th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982); *Guinasso v. Pacific First*

issue in the case is a question of federal law. In *Franchise Tax Board* the Court acknowledged that this rule "may produce awkward results", but reaffirmed the rule as supported by "unimpeachable authority". 103 S.Ct. at 2848, 77 L.Ed.2d at 432.

A plaintiff may not, however, avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law. Jurisdiction is determined on the basis of the *well-pleaded* complaint. A complaint that is "artfully pleaded" to avoid federal jurisdiction may be recharacterized as one arising under federal law. *Franchise Tax Board*, 103 S.Ct. at 2853, 77 L.Ed.2d at 439; *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981).

In suits arising under collective bargaining agreements, the "arising under" requirement of 28 U.S.C. § 1337 is supplemented by section 301 of the Labor-Management Relations Act, which provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

29 U.S.C. § 185(a) (1982). Section 301 does not divest state courts of concurrent jurisdiction to hear collective bargaining suits. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 n. 9, 82 S.Ct. 571, 576 n. 9, 7 L.Ed.2d 593 (1962); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Whether brought in state or federal court, however, a suit arising under a collective bargaining agreement is governed exclusively by federal law; this law "displace[s] entirely any state

cause of action 'for violation of contracts between an employer and a labor organization'". *Franchise Tax Board*, 103 S.Ct. at 2853, 77 L.Ed.2d at 439; *see Lucas Flour*, 369 U.S. at 102–04, 82 S.Ct. at 576–77; *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Collective bargaining agreements customarily provide for grievance and arbitration procedures, and unless an employee can show that he was not fairly represented by his union, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement. *See Republic Steel Co. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). To escape this exclusivity employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. Nevertheless, many of these cases are in fact section 301 suits and as such are governed by federal law. In such cases the "artful pleading" doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed to federal court and adjudicated under the appropriate federal law. The Ninth Circuit has approved such recharacterization in, e.g., *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.1983); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980); *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1368–69 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). In *Fristoe* this Court permitted removal when it was "apparent from the allegations in [the plaintiff's] complaint and his responses to the [district] court's questions that Fristoe was alleging ... [wrongful discharge] in breach of the collective bargaining agreement ...." 615 F.2d at 1212. More recently, in *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984), the Court stated that removal is appropriate when "the substance of [the] claim ... states on its face a federal

---

*Federal Savings & Loan Ass'n*, 656 F.2d 1364, 1367 (9th Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Wash-*

*ington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9th Cir.1972).

cause of action," *id.* at 1371 n. 5. The Fifth Circuit has recently held that "when a state cause of action is preempted by section 301, the federal courts have original subject matter jurisdiction over the action despite the absence of a federal claim on the face of the complaint." *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 366 (5th Cir.1984).

■ There is potential for conflict between the liberal removal rules of *Eitmann*, the approach used in *Fristoe*, and the strict doctrine articulated in *Garibaldi*, but we need not resolve any of those conflicts here. Some language in *Garibaldi*, read in isolation, implies that federal jurisdiction may not be based on any fact that is not stated in the plaintiff's complaint. *See, e.g., Garibaldi*, 726 F.2d at 1370 n. 5. Because Olguin's complaint does not explicitly mention the existence of a collective bargaining agreement, such a rule would require dismissal. *Garibaldi* recognizes, however, that the artful pleading doctrine permits removal when "federal law requires [the plaintiff] to rely on a federal remedy", *id.* at 1371 n. 5. The artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts. In *Schroeder* and *Fristoe* we relied on facts outside the four corners of the complaint to support removal. As the Court noted in *Schroeder*, the defendant's removal petition may be considered because the plaintiff's complaint—especially one that is "artfully pleaded"—is likely to omit facts necessary for the court to determine the true nature of the complaint. 702 F.2d at 191. *Garibaldi* does not hold to the contrary. *Garibaldi* found removal to be improper because the plaintiff's cause of action was not preempted by federal law, not because the district court went beyond the face of the complaint. We conclude that in determining whether a complaint is "artfully pleaded", the court is not bound to consider only the facts pleaded in the complaint but may look elsewhere to ascertain facts that would appear in a "well pleaded" complaint. If on those facts it is apparent that the plaintiff can only proceed under federal law, the complaint is properly removable.[5]

### III.

Labor preemption is a complex and confused area of the law. Preemption is a matter of congressional intent, but the labor statutes provide little or no guidance as to what aspects of state law Congress intended to preempt. *See Belknap, Inc. v. Hale*, 463 U.S. 591, ——, 103 S.Ct. 3172, 3190, 77 L.Ed.2d 798, 823 (1983) (Brennan, J., dissenting); *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 286–291, 91 S.Ct. 1909, 1917–20, 29 L.Ed.2d 473 (1971). Because federal law does not cover every dispute that can arise out of an employment or union relationship, total preemption is impossible. *See Vaca v. Sipes*, 386 U.S. 171, 179–81, 87 S.Ct. 903, 910–12, 17 L.Ed.2d 842 (1967). At the same time some preemption is essential to prevent state laws from interfering with fundamental federal policies. *See San Diego Trades Council v. Garmon*, 359 U.S. 236, 241–45, 79 S.Ct. 773, 777–79, 3 L.Ed.2d 775 (1959). The courts have thus been required to develop a body of preemption doctrine based on legislative history and judicial conceptions of what federal labor policy requires. Essentially, in any preemption case the court must attempt to weigh the state's interests against those of federal labor policy. *See Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1372–73 (9th Cir.1984). The courts' approaches to the problem have not always been consistent, however, nor have the results always been fully reconcilable; commentators have criticized the judicial decisions but have provided no clear consensus on an alternative approach.[6]

5. Of course, a cause of action that relies explicitly on federal law is also removable even if a state law cause of action could have been brought instead.

6. For recent discussions, see, e.g., Brody, *Labor Preemption Again-After the Searing of* Garmon,

13 Sw.U.L.Rev. 202 (1982); Cox, *Recent Developments in Federal Labor Law Preemption,* 41 Ohio St.L.J. 277 (1980); Comment, *Intimations of Federal Removal Jurisdiction in Labor Cases: The Pleadings Nexus,* 1981 Duke L.J. 743; *The Supreme Court, 1978 Term,* 93 Harv.L.Rev. 60,

This case, however, presents no serious difficulties. Settled precedent makes clear that each of Olguin's state causes of action is preempted by federal law and must be brought, if at all, under the strictures of the National Labor Relations Act. We examine each in turn.

### A. Breach of Contract

■ Olguin alleges that Inspiration's written personnel policy manual, which provides for progressive discipline, constituted a contract between Inspiration and Olguin; he then alleges that Inspiration denied him certain steps of progressive discipline and thus breached the contract. This claim is clearly preempted. To the extent that the alleged policy manual is inconsistent with the provisions of the collection bargaining agreement, the bargaining agreement controls. *J.I. Case v. NLRB*, 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944); *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 362 (5th Cir. 1984). The bargaining agreement provides that the Company has the right to discharge or discipline employees for just cause (article 9.8), and provides further that the bargaining agreement, along with listed addenda, will be the sole agreement between Inspiration and the Union "or any of the employees covered by the Agreement" (article 17). The alleged personnel manual could have binding effect only if it were authorized by and incorporated by reference in the collective bargaining agreement. By omitting any reference to the collective bargaining agreement Olguin attempts to avoid federal jurisdiction, but his suit is effectively a suit to enforce the collective bargaining agreement, and section 301 provides Olguin's only remedies. *See Sheeran v. General Electric Co.*, 593 F.2d 93, 96–97 (9th Cir.), *cert. denied*, 444

U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). This cause of action was therefore properly removed.

### B. Wrongful Discharge

■ In this cause of action Olguin alleges that he was discharged without just cause or progressive discipline in violation of "an agreement of employment" between Inspiration and Olguin. Olguin's complaint does not specifically identify this agreement and it would not be unreasonable for the court to infer that this agreement was, in fact, the collective bargaining agreement. Assuming that Olguin refers to some other agreement, preemption is nevertheless clear. Like the personnel policy manual, any independent agreement of employment could be effective only as part of the collective bargaining agreement. That agreement explicitly provides for dismissal on just cause. Even if the "wrongful discharge" is based on state tort law, it is preempted.[7] The agreement provides the same or greater protection of job security that state tort law seeks to provide for nonunionized employees; accordingly federal law preempts state law. *See Garibaldi*, 726 F.2d at 1374 n. 11; Comment, *NLRA Preemption of State Wrongful Discharge Claims*, 34 Hastings L.J. 635, 660 (1983). Olguin's alleged right not to be dismissed without just cause is essentially equivalent to a right created by the collective bargaining agreement. It is apparent that the true nature of Olguin's wrongful discharge complaint concerns the terms and conditions of employment as they are set out in the collective bargaining agreement. Olguin cannot rely on some other agreement or on state law protections of job security: his complaint is in fact a

263–74 (1979); Comment, *NLRA Preemption of State Wrongful Discharge Claims*, 34 Hastings L.J. 635 (1983); Case Comment, *Balancing in Labor Law Preemption Cases: New York Telephone Co. v. New York State Department of Labor*, 32 Stan.L.Rev. 827 (1980). The best known alternative is that proposed by Professor Cox, who argues that federal labor law should preempt only laws specifically directed toward regulation of collective activity, not laws of general applicability that happen to affect the em-

ployment relationship. However, the Supreme Court has never fully accepted the Cox test, although it has moved in that direction from time to time. *See Garibaldi* at 1372 n. 7.

7. We need not consider here whether tort law protects employees from wrongful discharge in Arizona. *See Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (Ariz.App.1980), rejecting a wrongful discharge tort claim based on a duty of fair dealing.

section 301 suit on the bargaining agreement. *See Schroeder,* 702 F.2d at 191; *Magnuson,* 576 F.2d at 1369.

### C. *Wrongful Discharge in Violation of Public Policy*

█ Olguin alleges, as he did before the NLRB and FMSHA, that he was unjustly disciplined and discharged in retaliation for his safety complaints and "concerted protected activity". Olguin alleges that this violated "public policy enunciated in the Statutes of the United States of America and the State of Arizona, including but not limited to the Federal Mine Safety and Health Act ... and the National Labor Relations Act...." Olguin mentions no specific Arizona statutes or policies.

A tort of wrongful discharge has developed in some states to protect employee job security despite the historical common law rule of employment at will. *See Garibaldi,* 726 F.2d at 1374. As we have indicated, this tort is supplanted by the provisions of the collective bargaining agreement. The other objective of wrongful discharge law, however, is to assist in the enforcement of statutes or policies extrinsic to the employment relationship.[8] *See id.* at 1373–74.

In *Garibaldi* this Court allowed an employee to bring suit in state court alleging that he was discharged for reporting to local health authorities that his employer had ordered him to deliver a load of spoiled milk. The Court held that the state's interest in enforcing its local health regulations is strong, and that California could use private tort actions to enforce these regulations without interfering with federal labor policy.

*Garibaldi* does not help Olguin, however, because Olguin's assertion is that he was discharged for complaining about mine safety conditions and engaging in concerted labor activity. Mine safety is governed by the Federal Mine Safety and Health Act, 30 U.S.C.A. §§ 801–962 (West Supp.1983), and concerted activity is protected by the federal labor laws. Olguin's remedies were provided by his employment contract

and those federal statutes. Indeed, Olguin complained to both the NLRB and the FMHSA. He cannot now seek protection in state law, because he acted in behalf of no state law or policy. Arizona has little interest in enforcing federal law, even if that federal law is incorporated, as Olguin suggests, in the state's general public policy. Olguin explicitly invoked federal law in this cause of action and it was therefore removable, if not under section 301, then under the general federal question statute, 28 U.S.C. § 1331 (1982).

### D. *Intentional Infliction of Emotional Distress*

█ Olguin alleges that Inspiration and its agents engaged in outrageous and unprivileged conduct with the intent of harassing him and causing him emotional distress. In *Farmer v. United Brotherhood of Carpenters, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the plaintiff's complaint was that his union had engaged in outrageous conduct in a dispute involving the union's refusal to refer the plaintiff out of its hiring hall. The Court held that federal law did not preempt the plaintiff's state tort claim for intentional infliction of emotional distress. The Court emphasized, however, that the plaintiff could not recover damages for the hiring discrimination itself but only damages "unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." 430 U.S. at 305, 97 S.Ct. at 1066.

In *Magnuson* this Court concluded that *Farmer* created a "narrow exception to federal preemption". 576 F.2d at 1369. We held that federal law preempted an employee's emotional distress action against his employer and its agents, because the emotional distress alleged arose out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge. All these acts were covered by the griev-

---

**8.** Again, we need not consider whether Arizona recognizes this tort. *See Daniel,* 620 P.2d at 701; *Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (Ariz.App.1977).

ance provisions of the collective bargaining agreement. *Id.* at 1369–70. We followed *Magnuson* in *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425 (9th Cir. 1983), where we held that a plaintiff could not bring a state emotional distress claim arising out of an alleged wrongful discharge, because all the specific items of harassment "really involved grievances or minor disputes under the [Railway Labor Act]", *id.* at 427–28.

In *Garibaldi* the Court distinguished *Beers* and held that the plaintiff's emotional distress claim did not state a federal cause of action. The Court noted, however, that *Beers* concerned emotional distress arising out of matters covered by the collective bargaining agreement. In *Garibaldi,* on the other hand, the emotional distress allegedly arose from conduct not itself subject to exclusive federal jurisdiction—that is, from the defendants' retaliation for the plaintiff's report of spoiled milk to local health authorities. 726 F.2d at 1369 n. 4.

Olguin has not shown that any of the acts alleged in his emotional distress complaint were not disputes concerning employment or work conditions. Indeed, he filed a grievance after each instance of discipline, and in two of those grievances, he also complained of general harassment. The conduct of which Olguin complains is governed by federal law—the MSHA, the federal labor laws, and the collective bargaining agreement—to the exclusion of state law.[9] The complaint, if viable at all, could therefore be viable only as a section 301 suit or a suit under federal statute. The district court correctly held that this cause of action, like the others, was removable.

### IV.

 Once it became apparent that Olguin's complaint, however artfully pleaded, actually stated claims under federal law, the district court correctly held that all the claims had to be dismissed. Olguin's exclusive remedies lay under the grievance pro-

cedures of the collective bargaining agreement and in federal remedies for retaliatory discharge. Olguin exhausted some of these remedies; he failed to pursue others in a timely fashion. He does not allege that his union breached its duty of fair representation; he therefore cannot maintain a section 301 suit independent of the procedural requirements of the collective bargaining agreement. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

The judgment is AFFIRMED.

---

**9.** The district court found "specifically that the claimed state tort of outrage is intertwined with labor-management relations and activities sub-

ject to grievance under the collective bargaining agreement".