Margi CLINCH, Plaintiff,

v.

MONTANA AFL–CIO, Defendant.

No. CV–84–262–H.

United States District Court,
D. Montana,
Helena Division.

Feb. 7, 1986.

John W. Larson, Missoula, Mont., for plaintiff.

D. Patrick McKittrick, Great Falls, Mont., for defendant.

## OPINION and ORDER

BATTIN, Chief Judge.

Margi Clinch, plaintiff, brought this action in state court seeking damages for breach of the duty of good faith and fair dealing owed her by her employer, Montana AFL–CIO, defendant. Asserting that federal law, pursuant to the Labor-Management Relations Act of 1947, 29 U.S.C. §§ 158(b), 173(d), 185, the Fair Labor Standards Act, 29 U.S.C. § 203(d), and the Job Training Partnership Act, 29 U.S.C. § 1501 et seq., preempt plaintiff's state law claim for relief, defendant removed the action to this court on October 25, 1984. Plaintiff

filed a motion for remand to the state court on November 2, 1984. On December 7, 1984, defendant filed a cross-motion to dismiss for failure to state a claim upon which relief may be granted. This court denies plaintiff's motion for remand and dismisses plaintiff's complaint.

### I. *Background*

Clinch was hired on November 28, 1983, as an administrative assistant for the Rocky Mountain Work Project (the Project), a program established under the Job Training Partnership Act (JTPA), 29 U.S.C. § 1501 et seq., and administered by the Montana AFL–CIO. Clinch worked for the Project until May 11, 1984 when she resigned her position. Plaintiff maintains that defendant coerced her resignation, while defendant maintains that her resignation was voluntary.

At a representation election on May 8, 1984, the employees of the Project voted to be represented by the International Association of Machinists and Aerospace Workers (IAMAW). A letter of recognition of the IAMAW as the collective bargaining representative, signed by Clinch with other employees, was delivered to Montana AFL–CIO on May 10, 1984, the day before Clinch's resignation.[1] Clinch had voted in favor of the IAMAW as the Project's collective bargaining representative. Apparently there was no collective bargaining agreement in force from November 28, 1983 until May 10, 1984. There was no written labor contract between Clinch and her employer; nor was there a printed job description. Clinch maintains she was an "at will" employee.

Franz Ortloff, representative of the IAMAW, on behalf of Clinch and two other past employees of the Project, filed unfair labor practice charges against the Montana AFL–CIO with the National Labor Relations Board on August 17, 1984. On August 22, 1984, Clinch, Ortloff, another past employee, and representatives of Montana

---

1. Franz Ortloff, the representative of the IAMAW, corrected the statement in his first affidavit that "on or about May 9, 1984, I served a letter of recognition on the Montana State AFL– CIO indicating that the Union represented these employees." The letter, signed by the Project's employees including Clinch, was dated May 9, 1984, but not served until May 10, 1984.

AFL–CIO entered into an agreement in settlement of the charges.[2] Essentially, the agreement precluded Clinch from filing any unfair labor practice charge resulting from her employment and limited her redress to partial grievance procedures for violation of the JTPA. The original unfair labor practice charges were withdrawn. Clinch decided not to pursue the grievance procedure.[3]

## II. *Preemption by Federal Laws*

The primary issue presented in this case is whether plaintiff's state tort claim for breach of the duty of good faith and fair dealing is preempted by federal labor laws. The general rule with respect to preemption of state law was recently stated by the Supreme Court in *Allis-Chalmers v.*

*Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) as follows:

Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution. Congressional power to legislate in the area of labor relations of course, is long established. Congress, however, has never exercised authority to occupy the entire field in the area of labor legislation. Thus, the question whether a certain state action is pre-empted by federal law is one of congressional intent. " 'The purpose of Congress is the ultimate touchstone.' " [Citations and footnote omitted].

*Id.* at 1909–10.[4]

This court, in *Magnuson v. Burlington Northern, Inc.,* 413 F.Supp. 870 (D.Mont.

---

**2.** The August 22, 1984, agreement reads in relevant part, as follows:

1. The [IAMAW] will not file unfair labor practice charges on behalf of any employees working for federal programs administered by the Montana State AFL–CIO up to and including the date of August 21, 1984. In addition, no unfair labor practice charges or grievances shall be filed by ... Margaret Clinch on activities during employment through the date of August 22, 1984, with the exception of paragraph two (2) following. Neither employee shall discuss this in private or public or with the press.

2. Margaret Clinch shall be afforded the opportunity to file a grievance[*] in accordance with Step Four regarding her termination, which grievance shall be resolved in Step Four.

. . . . .

5. The employees who have filed a Decertification Petition* * agree to withdraw that petition with the understanding that an election will be held prior to September 27, 1984, to determine if the employees wish to be represented by the [IAMAW]. The election will be conducted by an impartial third party agreed to by all signators to this agreement.

6. Signators to this agreement and those individuals they re-represented agree not to disclose or discuss any terms or circumstances surrounding this agreement. Nor shall a copy of this agreement be provided any party not directly involved herewith.

7. Nothing in this agreement shall be construed as an admission of guilt, wrongdoing, violations of the National Labor Relations Act or any other state or federal law. All parties to this agreement concur that this agreement is being reached solely in the best interests of the labor movement.

* A grievance procedure adopted by the Montana AFL–CIO for alleged violations of the Job Training Partnership Act sets forth procedure for a hearing, and three subsequent and successive appeal stages. The grievance procedure, although undated, was apparently adopted pursuant to 29 U.S.C. § 1554 of the Job Training Partnership Act.

* * Prior to this agreement, there was a movement to decertify IAMAW.

**3.** The agreement did not allow Clinch to utilize fully the Project's grievance procedures—she was only allowed to present her claim under one step, and not successively under all four steps provided. Clinch had asked to avail herself of step III of the grievance procedure, but was denied this opportunity by the August 22, 1984, agreement. The agreement required Clinch to use only step IV of the grievance procedure. In his affidavit, dated December 19, 1984, Franz Ortloff stated: "That affiant was not authorized, nor did he intend to create a mandatory grievance procedure for Margi Clinch to follow, nor was it anyone's understanding who signed the agreement ... that said grievance procedure was mandatory or that there was any time frame in which it had to be filed."

**4.** *Lueck* involved an alleged bad faith handling of an insurance claim, including a claim under a disability insurance plan included in a collective-bargaining agreement—a tort under Wisconsin law. The Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, ... or dismissed as pre-empted by federal labor-contract law. This complaint should have

1976) *aff'd.* 576 F.2d 1367 (9th Cir.1978) held that plaintiff's claim for intentional infliction of emotional distress following his alleged wrongful discharge as a train dispatcher was within the exclusive province of the grievance mechanism of the Railway Labor Act. This case was cited with approval in the recent Ninth Circuit case of *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984), where the plaintiff filed suit in state court for wrongful discharge, intentional infliction of emotional distress, and breach of contract. The court held that the conduct of which Olguin complained was governed by federal law—"the MSHA [Federal Mine Safety and Health Administration], the federal labor laws, and the collective bargaining agreement—to the exclusion of state law." *Id.* at 1476.

Plaintiff argues that she was never a member of the Union, was not represented by any bargaining unit and had no labor contract, but was an administrative employee of a project sponsored by the defendant. It is clear from the record, however, that on May 8, 1984, the plaintiff voted in favor of representation by the IAMAW, and on May 9 signed a letter of recognition of the IAMAW as the collective bargaining representative; that this letter was delivered to defendant on May 10, and that plaintiff resigned the following day. The representative of the IAMAW filed an unfair labor practice charge on plaintiff's behalf on August 17, 1984, and on August 22 plaintiff signed an agreement in settlement of the charge.[5]

■ It is the opinion of this court that these facts created a relationship which was governed by Section 301 of the LMRA. As the Court noted in *Allis Chalmers v. Lueck,* "Section 301 states: 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the

United States having jurisdiction of the parties....' 29 U.S.C. § 185(a)." 105 S.Ct. at 1910. The Court held that,

> If the policies that animate § 301 are to be given their proper range, ... the preemptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy." *Bowen v. United States Postal Service*, 459 U.S. 212, 224–225, 103 S.Ct. 588, 596, 74 L.Ed.2d 402 (1983).

*Id.* at 1911.

In holding that the conduct of which plaintiff complained was governed by federal law, the court in *Olguin* noted that Olguin had not shown that the acts alleged "were not disputes concerning employment or work conditions." 740 F.2d at 1476. The same is true here.

### III.  *Preemption by JTPA*

■ Assuming, arguendo, that the Labor-Management Relations Act of 1947 and the Fair Labor Standards Act are not applicable under the facts of this case, it is clear that plaintiff's state law claim was preempted by the JTPA. The JTPA, 29 U.S.C. § 1553, ensures reasonable benefits and working conditions for employees of funded projects. Clinch was employed by such a project. Specifically, section 1553(a)(1) and (4) provides the following "labor standards":

> conditions of employment and training shall be appropriate and reasonable in light of such factors as the type of work, geographical region, and proficiency of the participant.... All individuals employed in subsidized jobs shall be provided benefits and working conditions at the same level and to the same extent as other employees working a similar length of time and doing the same type of work.

been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement." *Id.* at 1916.

5. The Union representative stated that he went over the agreement in detail with plaintiff before she signed it.

The JTPA, 29 U.S.C. § 1554(a) and (b), then requires all funded employers to "establish and maintain a grievance procedure for grievances or complaints about its programs and activities from participants.... Except for complaints alleging fraud or criminal activity, complaints shall be made within one year of the alleged occurrence.... Each ... employer of participants under this Act shall continue to operate or establish and maintain a grievance procedure relating to the terms and conditions of employment." Congress explicitly provided that the grievance procedure broadly apply to the terms and conditions of employment. The terms and conditions of employment reasonably interpreted include conditions of any resignation or termination. In light of the fact that the Project was funded by the federal government and that Congress enunciated that the grievance procedure apply to the terms and conditions of the employment, the JTPA preempts plaintiff's state law cause of action.

## IV. "Well Pleaded Complaint" Rule

■ This case also presents the issue of whether this court may maintain federal question jurisdiction in light of the "well pleaded complaint rule." To maintain federal question jurisdiction a complaint must plead on the face of the complaint "a right or immunity created by the Constitution or laws of the United States." *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1471 (9th Cir.1984) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ). Generally, "federal jurisdiction is not created when the plaintiff's cause of action is preempted by federal law, because preemption is a *defense* only, not an element of the complaint." *Id.* (emphasis in original); *Nalore v. San Diego Federal Sav. and Loan Ass'n*, 663 F.2d 841 (9th Cir.1981). At the same time, however, a plaintiff may not "artfully plead" her cause of action to avoid federal question jurisdiction. The courts recharacterize artfully pleaded complaints as arising under federal law, thus resulting in federal question jurisdiction.

*Olguin*, 740 F.2d at 1472; *Magnuson*, 576 F.2d at 1369.

■ Whether a complaint has been artfully pleaded depends upon the nature of the claim. *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1370–71 n. 5 (9th Cir.1984). This court may maintain federal question jurisdiction when " 'federal law not only displaces state law but also confers a federal remedy on the plaintiffs or compels them to rely, explicitly or implicitly, on federal propositions.' " *Id.* (quoting *Guinasso v. Pacific First Federal Sav. and Loan Ass'n*, 656 F.2d 1364, 1367 (9th Cir.1981)). This court, however, may not maintain federal question jurisdiction when preemption proposes only "that the state [may] not regulate the field, not that the complaint stated a federal cause of action." *Id.*

■ The JTPA provides a cause of action for failure to provide benefits or conditions granted to other employees doing the same type of work. 29 U.S.C. § 1553. The JTPA further requires the employee to conform with a grievance procedure. 29 U.S.C. § 1554(a) and (b). Thus, the JTPA requires plaintiff "to rely, explicitly or implicitly," on the JTPA. The substance of plaintiff's complaint is a federal cause of action. The acts complained of were disputes concerning employment or work conditions. The action was properly removed to federal court.

## V. Motion to Dismiss

Plaintiff initially, through the Union Representative, filed an unfair labor practice charge with the National Labor Relations Board. By the agreement of August 22, 1984, this charge was withdrawn. The agreement expressly recognized the right of the plaintiff to follow one of the grievance procedures adopted by the defendant pursuant to the JTPA. Plaintiff subsequently decided not to pursue the grievance procedure and instead brought this action in state court.

■ In *Olguin*, the court concluded that "Once it became apparent that Olguin's

complaint, however artfully pleaded, actually stated claims under federal law, the district court correctly held that all the claims had to be dismissed." 740 F.2d at 1476.[6] While Olguin's "exclusive remedies lay under the grievance procedures of the collective bargaining agreement and in federal remedies" (*Id.*), here the exclusive remedy is governed by the agreement signed by plaintiff expressly providing a grievance procedure adopted by the defendant pursuant to the JTPA.[7]

IT IS ORDERED that plaintiff's motion to remand to state court is ·denied, and defendant's motion to dismiss is granted.

---

**6.** Olguin had exhausted some of his remedies and failed to pursue others in timely fashion.

**7.** While plaintiff may have preferred to follow Step III of the prescribed procedures, she expressly agreed in writing to follow Step IV. Ortloff's affidavit states in part: "It was agreed by and between the representative of the Montana AFL–CIO and me as representative of the Union representing the unit employees and the unit employees including Margi Clinch that Margi Clinch would be afforded the opportunity to file a grievance in accordance with Step IV of the established arbitration procedure regarding her termination if she desired to so contest the termination. It was also agreed that the grievance would be resolved at that Step IV procedure."