223 F.3d 1010 (9th Cir. 2000)
 MARIO AGUILERA; RODOLFO ABELLA; JAMES ALCORN; JAMES APODACA; JESSE ARENIVAS, JR.; RICHARD ARROYO; VALENTIN JOSE AVILA; TONYA BADGETT; JAMES A. BARNES; RONALD L. BAUMGARTNER; DANIEL BAUTISTA; DAVE BLAIR; JOHN BLAIR; VERNON BRESENIO; JOHN BRIGGS; TONY BRUNO; JOHN R. BURLESON; RUBEN CANO; GENARO CASTILLO; EUGENE CHESTER; BEN CHRISTIAN; DAVID CLEMENTE; RANDALL COOMER; WILFREDO CUNANAN; RICHARD B. CUNNINGS; DAVID DANIEL, Plaintiffs-Appellants,
v.
PIRELLI ARMSTRONG TIRE CORPORATION, Defendant-Appellee.
 No. 98-16899
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 11, 2000--San Francisco, California
Filed September 8, 2000
 [Copyrighted Material Omitted]
 Joseph Clapp, Herron & Herron, San Francisco, California, for the appellants.
 Philip L. Ross, Littler Mendelson, PC, San Francisco, California, for the appellees.
 Appeal from the United States District Court for the Eastern District of California, D.C. No. CV-97-05170-OWW; Oliver W. Wanger, District Judge, Presiding
 Before: Procter Hug, Jr., Chief Judge, Dorothy W. Nelson, and M. Margaret McKeown, Circuit Judges.
 HUG, Chief Judge:
 
 
 1
 The questions before us are whether the appellants' state law fraud and breach of contract claims against their former employer are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. S 185, and whether their statutory claim was properly dismissed. The district court granted summary judgment to the appellants' former employer on the appellants' claims brought under California law, ruling that section 301 preempted them. The court also held that the appellants' state statutory and public policy claims were barred by the applicable statute of limitations or, in the alternative, were without merit. We affirm the district court's judgment in all respects.
 
 I BACKGROUND
 
 2
 Rodolfo Abella and other workers (collectively "appellants" or "replacements"), were hired as strike replacements during a United Rubber Workers' strike at Pirelli Armstrong Tire Corporation's ("Pirelli") tire manufacturing plant in Hanford, California. The United Rubber Workers Union Local 703 ("union") represented the production and maintenance employees at Pirelli for the purposes of collective bargaining. In May 1994, Pirelli and the union began negotiations to replace an expiring collective bargaining agreement ("CBA"). When the negotiations failed in July 1994, more than 500 union employees began a strike at the Hanford plant.
 
 
 3
 In August 1994, Pirelli began hiring temporary replacement workers to replace the striking workforce. Pirelli continued to hire replacement workers on a staggered basis and subsequently converted temporary replacements to permanent replacements. The appellants were replacement workers hired in September and October 1994 and contend that at the timethey were hired, they were promised that they would be permanent employees who would not subsequently be replaced by returning strikers. The terms and conditions of the appellants' employment were not expressly governed by a CBA.
 
 
 4
 On September 14, 1994, the union filed unfair labor practice charges against Pirelli with the National Labor Relations Board ("NLRB"). In a decision issued February 24, 1995, the NLRB regional director agreed with the union that Pirelli had engaged in unfair labor practices. On February 28, 1995, the union offered to settle the strike and return to work. Pirelli's appeal of the NLRB Regional Director's decision was denied without comment on March 7, 1995. Pirelli then accepted the union's offer to return to work on March 8, 1995.
 
 
 5
 In order to accommodate returning strikers, Pirelli laid off the 207 replacement workers who were hired after October 3, 1994, because they had the lowest seniority. Replacement employees with "clock numbers" 3561 or lower (hired on or before October 3, 1994) were retained; those with clock numbers higher than 3561 (hired after October 3, 1994) were laid off with future rehire rights. Strikers returned to work beginning March 13, 1995. The appellants--all of whom were hired on or before October 3, 1994--were not laid off at this time.
 
 
 6
 Pirelli and the union entered into a new CBA on March 27, 1995. The CBA recognized the union as "the exclusive collective bargaining agent for the employees" of Pirelli. Appellants were employed in collective bargaining unit positions during and after the strike and became members of the union at the conclusion of the strike pursuant to the terms of the CBA, which conditioned future employment on union membership. Former strikers retained seniority when the strike ended based on original hire dates.
 
 
 7
 During the strike, Pirelli's tire sales dropped nearly 25% from pre-strike levels. Diminished sales continued after the strike ended and Pirelli's post-strike earnings were lower than management projections. Consequently, on September 23, 1995, Pirelli laid off 175 union workers with the least seniority, including the appellants.
 
 
 8
 The appellants did not file union grievances following their layoffs. They instead chose to file suit in the district court on November 1, 1995. That case, Anderson et al. v. Pirelli Armstrong Tire Corporation, was originally brought by three named plaintiffs and pled as a class action on behalf of the 175 former replacement employees laid off during the September 1995 reduction in force. The operative facts and legal arguments in Anderson were identical to those in the instant case and each appellant herein was a putative class member in the Anderson case. The Anderson class was never certified and in March 1997, the district court granted summary judgment for Pirelli on all counts of the complaint. We affirmed in an unpublished Memorandum Disposition. See Anderson v. Pirelli Armstrong Tire Co., 152 F.3d 923 (9th Cir. 1998).[1]
 
 
 9
 The instant suit was filed February 27, 1997. The complaint alleged state law causes of action for fraud, negligent misrepresentation, breach of individual employment contract, violation of California Labor Code S 970, and discharge in violation of the public policy expressed in California Labor Code S 970. On August 31, 1998, the district court issued an opinion granting Pirelli's summary judgment motion. The court found that (1) the state law fraud, negligent misrepresentation andbreach of contract claims were preempted by the Labor Management Relations Act S 301 as each claim required an interpretation of the CBA; (2) the breach of contract, negligent misrepresentation and fraud claims were also preempted by the National Labor Relations Act, 29 U.S.C. S 151, et seq., as the claims involve "arguably prohibited" activity (unfair labor practices) within the exclusive jurisdiction of the NLRB; and (3) the California Labor Code and public policy claims were barred by the applicable statute of limitations or otherwise lacked merit. This appeal, in which the appellants abandoned the negligent misrepresentation claims, followed. We have jurisdiction pursuant to 28 U.S.C. S 1291, and we affirm.
 
 II STANDARD OF REVIEW
 
 10
 We review a grant of summary judgment de novo and we will affirm only if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the trial court correctly applied the substantive law. See Robi v. Reed, 173 F.3d 736, 739 (9th Cir. 1999). The district court's decision regarding preemption is reviewed de novo. See Niehaus v. Greyhound Lines Inc., 173 F.3d 1207, 1211 (9th Cir. 1999).
 
 III DISCUSSION
 
 11
 (A) Section 301 Preemption
 
 
 12
 Section 301 of the LMRA preempts state law claims that are based directly on rights created by a collective bargaining agreement, and also preempts claims that are substantially dependent on an interpretation of a collective bargaining agreement. See Biels v. Kiewit Pacific Co., Inc. , 114 F.3d 892, 894 (9th Cir. 1997) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)). When the meaning of particular contract terms is not disputed, however, the fact that a collective bargaining agreement must be consulted for information will not result in S 301 preemption. See Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994) (citing Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 413 n.12 (1988)).
 
 
 13
 The appellants argue that the terms of their CBA are neither disputed nor relevant because their claims were fully actuated before the existence of the CBA and consequently fall outside the orbit of S 301 preemption. Pirelli counters that preemption is necessary because the appellants were laid off pursuant to the layoff and seniority provisions of the CBA and interpretation of the CBA's terms is integral to resolution of those claims. For the following reasons, we agree with Pirelli, and conclude that both the breach of contract and fraud claims are preempted by S 301.
 
 
 14
 (i) Breach of Contract claim
 
 
 15
 Appellants contend that their breach of contract claims stem from independent employment contracts between themselves and Pirelli in which, at the time they were hired, Pirelli allegedly promised each of the replacements that no other replacement would be replaced by returning strikers. They maintain that these contracts were breached in March 1995, when Pirelli laid off 207 other replacements, and are wholly independent of the later negotiated CBA. Though appellants were not laid off at this time, they argue that the March 1995 layoff of less senior replacement workers placed them at an enhanced risk of future layoff and thus constituted a breach of contract. In other words, the appellants argue that their breach of contract claim accrued and was actionable in March 1995, prior to the adoption of the CBA, and that their current claim is independent of any rights created by the CBA.
 
 
 16
 We first consider whether the appellants' purported independent contracts were in fact breached in March 1995 when other, less senior, replacements were laid off. Appellants do not assert that they are third-party beneficiaries to the contracts between Pirelli and the replacements laid off in March 1995. Nor couldthey prevail on such a theory. For a contract to be enforceable by a third party, a contract with another must be made expressly for the benefit of the third person. See Cal. Civ. Code S 1559. There is no evidence that any replacement's contract was intended to benefit any other replacement. Consequently, appellants cannot attempt to recover as third-party beneficiaries of the employment contracts between Pirelli and the replacement workers laid off in March 1995.
 
 
 17
 In lieu of a third party beneficiary theory of relief, appellants' March 1995 breach theory depends on a showing that they suffered legally cognizable harm on that date. Under California law, a breach of contract claim requires a showing of appreciable and actual damage. See Patent Scaffolding Co. v. William Simpson Const. Co., 256 Cal.App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable."). To show that they suffered actual damage in March 1995, appellants ask us to recognize a `fear of future layoff' as an actionable injury. We decline to do so. See Buttram v. Owens-Corning Fiberglass Corp., 16 Cal.4th 520, 531 n.4 (1997) ("[T]o be actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm-not yet realized . . .") (internal quotation marks and citations omitted). Appellants cannot otherwise show how they were damaged by the March 1995 layoff of other replacements except to point to their own layoff in September 1995. Consequently, appellants did not suffer harm until their own layoff in September 1995, and whatever breach occurred, it occurred on that date.
 
 
 18
 Given this conclusion, we must now decide whether resolution of the appellants' breach of contract claims requires an interpretation of the terms and provisions of the 1995 CBA. Appellants concede that at the time of their September 1995 layoff, they were part of the bargaining unit whose positions were covered by the 1995 CBA. They also acknowledge that they had expressly acceded to the CBA, which governed their job terms and layoff guidelines. We have previously held that where the position in dispute is "covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted." Audette v. ILWU Local 24, 195 F.3d 1107, 1112 (9th Cir. 1999) (quoting Biels, 114 F.3d at 894); see also Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997-98 (9th Cir. 1987) (alleged contract between employee and employer regarding reinstatement controlled by CBA because employee held position covered by CBA); Stallcop v. Kaiser Found. Hosp., 820 F.2d 1044, 1048 (9th Cir. 1987) (oral agreement by employer relating to employee's reinstatement only effective as part of the CBA).
 
 
 19
 Furthermore, we have consistently held state law based contract claims arising from alleged pre-employment misrepresentations to be preempted by S 301 when the employee is subsequently hired under a CBA. "Because any`independent agreement of employment [concerning a job position covered by the CBA] could be effective only as part of the collective bargaining agreement,' the CBA controls and the contract claim is preempted." Young, 830 F.2d at 997 (quoting Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1474 (9th Cir. 1984), overruled on other grounds, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985)); see also Stallcop, 820 F.2d at 1048. When an independent agreement is inconsistent with the provisions of a collective bargaining agreement, the bargaining agreement controls. See Olguin, 740 F.2d at 1474.
 
 
 20
 The appellants rely on the Supreme Court's statement in Caterpillar that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee, and claims based upon them may arise under state law." 482 U.S. at 396. However, Caterpillar is inapplicable under the factsof this case because the above statement addressed an individual employment contract negotiated for a position not covered by the CBA, at a time when the employee was not covered by a CBA. See id. at 388-89. This case comes to us in a significantly different posture. The appellants' positions were at all times bargaining unit positions and the appellants, though not covered by a CBA at the time the alleged promise was made, had expressly acceded to the CBA by the time of their own layoff. See Young, 830 F.2d at 998-99 (distinguishing Caterpillar because Caterpillar involved breach of contract claim concerning job not governed by CBA); Stallcop , 820 F.2d at 1048-49 (same). Thus, Caterpillar's reasoning does not apply to exempt the appellants' claim from S 301 preemption.[2]
 
 
 21
 Given that Pirelli acted in accordance with its contractual duties under the CBA when it laid off the appellants and these duties are allegedly inconsistent with the appellants' individual employment contracts, the CBA's terms control. See Olguin, 740 F.2d at 1474. Though appellants attempt to isolate their rights under their pre-CBA individual contracts from their CBA-governed layoff, we decline to bifurcate the analysis in this manner. Accordingly, we conclude that the appellants' breach of contract claims cannot be resolved without interpreting the layoff and seniority provisions of the 1995 CBA and are thus preempted by S 301 of the FLMA.
 
 
 22
 (ii) Fraud claim
 
 
 23
 As a threshold matter we note that although the language of S 301 is limited to "[s]uits for violation of contracts," it has been broadly construed to cover most state-law actions that require interpretation of labor agreements. 29 U.S.C. S 185(a); see Allis-Chalmers, 471 U.S. at 220 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a S 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted)). Therefore, section 301's preemptive force extends to fraud claims when resolution of the claims is inextricably intertwined with terms in a labor contract. See Bale v. General Telephone Co., 795 F.2d 775, 779-80 (9th Cir. 1986).
 
 
 24
 Whether the appellants' fraud claims are preempted depends on whether resolution of the claims would require an interpretation of the terms of the CBA. See Lingle, 486 U.S. at 407, 411. Appellants argue that Pirelli fraudulently promised each of the replacements that they would not be replaced by strikers when the strike ended. In order to establish intentional fraud under California law, appellants must prove (1) a false representation or concealment of fact; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) damages. See Cal. Civ. Code SS 1709, 1710; see generally Cicone v. URS Corp., 183 Cal.App.3d 194, 203 (1986). "A promise to do something necessarily implies the intention to perform, and where such intention is absent, there is an implied misrepresentation of fact, which is actionable as fraud." 5 Witkin, Summary of California Law S 685 (9th ed. 1988). Appellants concede that they themselves were not replaced by strikers. Thus, to prevail on their fraud claim, they must show that Pirelli, with no intent to perform, promised them that not only would they not be replaced by returning strikers, but that no other replacements would be replaced either.
 
 
 25
 Appellants again argue against preemption by contending that their fraud claim was fully actuated before the existence of the 1995 CBA and does not depend on any rights created by the CBA. They maintain that the March 1995 layoff of other replacements evidenced Pirelli's intention not to honor its promise to appellants that no replacement would be replaced by a returning striker. However, as outlined above, this construction of the alleged promise is merely a restatement of a traditional third party beneficiary theory and untenable under the facts of this case. Therefore, whatever promise Pirelli made to appellants regarding permanency, Pirelli's intent not to honor the promise could only have become known to appellants when they were laid off in September 1995.
 
 
 26
 As noted above, the appellants were laid off pursuant to the layoff and seniority provisions of the 1995 CBA, which validly governed their employment. The 1995 CBA is where Pirelli's alleged fraud becomes evident because it is in the CBA that Pirelli negotiated the return of strikers and the seniority/layoff provisions for all bargaining unit employees, including the appellants. Since these seniority terms, which placed returning strikers above the appellants in seniority, are what caused appellants' alleged harm, interpretation of the CBA is vital to resolution of the fraud claim. In this case, like in Bale, there is no way to assess the alleged misrepresentation without examining the instrument that has been misrepresented, the CBA. See Bale, 795 F.2d at 780. The appellants would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made. Resolution of their fraud claims is therefore "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." See id. (citing Allis-Chalmers, 471 U.S. at 220) (other citations omitted).
 
 
 27
 Beals v. Kiewit Pacific Co., 114 F.3d 892 (9th Cir. 1997) is not to the contrary. In Beals, the employee had been induced to move to Hawaii by an individual employment contract and later became part of the collective bargaining unit and subject to a valid CBA. Sometime after his move, Beals was discharged in accordance with the CBA but in violation of his independent contract. Though we concluded that Beals's breach of contract and tortious interference with contract claims were preempted by S 301, we held that his negligent misrepresentation claim was not. See id. , at 895. In order to prove negligent misrepresentation under Hawaii law, Beals had to show that (1) Kiewit failed to exercise reasonable care in communicating false information to Beals, and (2) Beals justifiably relied on that information. See id . Since the second prong of the test was solely dependent on Beals' state of mind, Beals did not have to rely on the CBA to prove his claim. Accordingly, the claim did not require an interpretation of the CBA and was not preempted by S 301. See id.
 
 
 28
 In contrast, though both the negligent misrepresentation claim in Beals and the fraud claim in the instant case contain a scienter element, the appellants' fraud claims require an examination of Pirelli's intent to defraud. Proof of Pirelli's intent not to perform and its non-performance lead directly to the layoff provisions of the CBA. Furthermore, the enforcement of the CBA is what constitutes the repudiation of the alleged promise to the appellants. Consequently, the appellants' fraud claims are preempted by S 301 of the FLMA.
 
 
 29
 (B) National Labor Relations Act Preemption
 
 
 30
 The district court also found all of the appellants' claims preempted under the National Labor Relations Act. As we have concluded that both the appellants' breach of contract and their fraud claim are preempted by S 301 of the LMRA, we decline to reach the issue of NLRA preemption.
 
 
 31
 (C) California Labor Code Claims
 
 
 32
 (i) Statute of Limitations
 
 
 33
 Finally, appellants contend that the district court erred in finding their California Labor Code S 970 claims barred by the applicable one year statute of limitations. Section 970 provides in relevant part that no employer shall indirectly or directly persuade a person to relocate from within or without the state of California for the purposes of working,"by means of knowingly false representations" concerning"[t]he length of time such work will last, or the compensation therefor." See Cal. Labor Code S 970(b). Some appellants claim that they relocated in reliance on the false representation that they were to be permanent employees.
 
 
 34
 The district court found that both the appellants' statutory claim under S 970 and their public policy argument stemming from S 970 are governed by the one year statute of limitations found in California Code of Civil Procedure S 340. See Munoz v. Kaiser Steel Corp., 156 Cal.App.3d 965, 980 (1984) (noting applicability of one-year statute of limitations to SS 970-72 claims); Funk v. Sperry Corp ., 842 F.2d 1129, 1133 (9th Cir. 1988) (applying one-year statute of limitations to "public policy" claim). The applicability of the one-year statute of limitations has not been challenged in this appeal. Thus, for the purposes of this case, we assume the correctness of the district court conclusion.
 
 
 35
 We now turn our attention to determining the date the appellants' claims accrued. In a reversal of the parties' stance throughout the rest of this appeal, Pirelli now argues that the appellants' claims accrued in March 1995, when they were first made aware that Pirelli's supposed representation was false. In contrast, appellants argue that their claim under S 970 only accrued upon their own layoff in September 1995.
 
 
 36
 The district court found the relevant accrual date to be March 1995, the time that the first group of replacements was laid off. We disagree, and conclude that the appellants' discharge date in September 1995 was the relevant accrual date for statute of limitations purposes. See Romano v. Rockwell Int'l, Inc., 14 Cal.4th 479, 491 (1996) (statute of limitations for claimed breach of an implied contract not to terminate employment without good cause accrues at time of actual termination, even when employer has issued an unequivocal notification of termination at an earlier date); Mullins v. Rockwell Int'l Corp., 15 Cal.4th 731, 738 (1997) (same). Though neither Romano nor Mullins involved claimed violations of S 970, we are nonetheless persuaded that the reasoning that informed those decisions is apropos in the instant case.
 
 
 37
 The instant lawsuit was filed February 27, 1997. As we have concluded that the appellants' claims accrued in September 1995, their claims are barred unless the statute of limitations was tolled during the pendency of the timely filed Anderson case, in which each of the appellants was a putative class member. Anderson was pled as a class action and the district court set October 15, 1996 as the deadline for the filing of a motion seeking class certification. The Anderson plaintiffs never filed a motion seeking certification and the district court ultimately granted summary judgment for Pirelli. The question before us is whether the statute of limitations was tolled during the pendency of that action.
 
 
 38
 In American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), the Supreme Court allowed unnamed members of a class to intervene as individual plaintiffs in an individual action that continued after denial of class certification. The court concluded that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." Id. at 553. In Crown, Cork & Seal Co. v. Parker,462 U.S. 345 (1983), the Court extended American Pipe to allow tolling not only when plaintiffs sought to intervene in a continuing action, but also when they sought to file an entirely new action. The Court noted that "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class, not just as to intervenors." Id. at 350 (internal quotation marks and citation omitted). However, the doctrines of American Pipe and Crown Cork are not without exceptions. In Robbin v. Flour Corp., 835 F.2d 213 (9th Cir. 1986), we declined to interpret American Pipe to allow tolling when the district court in the previous action had denied class certification, and when the second action merely sought to re-litigate the same issue of class certification and thereby to circumvent the earlier denial of class status. See id. at 214.
 
 
 39
 We note that the issue of class certification was never decided in Anderson, and the current action was filed on behalf of appellants as individuals. Thus, the concerns expressed in Robbin are not germane in this controversy. The appellants are not seeking to re-litigate the issue of class certification and we are convinced that no adverse policy considerations are implicated by tolling the statute of limitations during the pendency of the Anderson case. However, we agree with the district court that whatever tolling applied, it ceased once the deadline for seeking class certification passed on October 15, 1996.
 
 
 40
 The appellants were discharged on September 23, 1995. The Anderson case was filed November 1, 1995, thus 8 days passed before the statute of limitations was tolled. It resumed October 15, 1996 and the plaintiffs filed the instant suit February 27, 1997. Consequently, the appellants' complaint is not barred by the statute of limitations because, with tolling, only 135 days passed between the accrual of the claim and the filing of the suit.
 
 
 41
 (ii) Merits of Appellants's section 970 Labor Code claim
 
 
 42
 In the alternative, the district court ruled on the merits of the appellants' labor code claims and granted summary judgment for Pirelli. We affirm the district court on this ground. To prove a violation of S 970, appellants would have to show that Pirelli made a knowingly false representation regarding the permanency of their employment as production workers with the intent to persuade the appellants to relocate to Hanford, CA. See Finch v. Brenda Raceway Corp., 22 Cal.App.4th 547, 553 (1994).
 
 
 43
 The district court ruled against appellants because (1) Pirelli could not have foreseen that the strike would be ruled an unfair labor practices strike and that it would be compelled to reinstate striking workers; (2) appellants do not dispute that they were laid off because of a downturn in Pirelli's business and cannot assert that they were promised that they would never be subject to an economic layoff; (3) appellants signed on with a company with a long history of union representation and consequently should be charged with knowledge that when they joined the union, they did so with knowledge that their seniority and job security would be affected; and (4) appellants had failed to offer any proof that any of the plaintiffs moved to Hanford, CA for work. We agree with the district court.
 
 
 44
 The record is devoid of any evidence that supports the appellants' labor code claims or contradicts the above findings. They have provided no evidence that Pirelli's alleged promise was false when made or that they relocated in reliance on that promise. On a motion for summary judgment, the non-moving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See UA Local 343 of United Ass'n of Journeymen & Apprentices of Plumbing v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir.), cert. denied 116 S.Ct. 297(1996). Accordingly, we conclude that the appellants have failed to create a genuine issue of material fact on either their statutory claim under S 970 or their public policy claim stemming from that section and the district court correctly dismissed their complaint on the merits.
 
 
 45
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 In the Anderson case, Pirelli's motion for summary judgment was filed against an uncertified class of plaintiffs. When a motion is maintained against an uncertified class, only the named plaintiffs are affected by the ruling. There is no res judicata effect as to unnamed members of the purported class. See Wright v. Shock, 742 F.2d 541, 544 (9th Cir. 1984). Thus, the Appellants in the instant case remained free to assert their rights against Pirelli despite the Anderson ruling.
 
 
 [2]
 Neihaus v. Greyhound Lines, Inc. , 173 F.3d 1207 (9th Cir. 1999), is distinguishable on the same grounds. In Neihaus , we concluded that certain state law claims were not preempted by S 301 because the plaintiff's specifically contracted right to receive the union's cooperation in securing his return to its ranks was independent of rights governed by the CBA. See id. at 1212. Neihaus's position was not covered by the CBA and none of the CBA's terms were in dispute.