Filed 11/22/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELATION SYSTEMS, INC.,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>FENN BRIDGE LLC, et al.,<br><br>　　　　Defendants and Respondents. | A159749, A160823<br><br>(Alameda County<br>Super. Ct. No. RG15758321) |

　　　　Plaintiff Elation Systems, Inc. (Elation) sued defendants Fenn Bridge LLC (Fenn Bridge) and Tiebiao "Joe" Shi (Shi) on multiple causes of action, including (1) breach of a nondisclosure agreement (NDA) (against Shi only) entered during the course of Shi's prior employment with Elation; and (2) breach of a confidential settlement agreement and mutual release (Settlement Agreement) (against both defendants) entered to resolve a prior action between the parties. In turn, defendants filed a cross-complaint that included a cause of action for Elation's breach of the Settlement Agreement. During trial, Elation admitted to liability and stipulated to $10,000 in liquidated damages on the cross-claim for breach of the Settlement Agreement. At trial, the jury found that Shi had breached the NDA and harmed Elation, and awarded Elation $10,000 in damages. The jury also

---

*　　　Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B, C, and D of the Factual and Procedural Background and part A.2 and all of part B of the Discussion.

found that defendants had breached the Settlement Agreement, but that Elation had suffered no harm. Following the jury verdict, Elation filed a motion that included a request for entry of a permanent injunction against defendants.

Defendants then filed a motion for judgment notwithstanding the verdict (JNOV), challenging (1) the jury's finding on harm and award of damages for the NDA claim; and (2) the jury's finding of breach on the Settlement Agreement claim. The trial court granted the JNOV motion and denied Elation's motion for injunctive relief. Defendants subsequently filed a motion for attorney fees pursuant to Civil Code section 1717.[1] The court entered judgment awarding defendants $700,000 in attorney fees.

In this consolidated appeal, Elation challenges (1) the JNOV order; and (2) the judgment awarding attorney fees to defendants. In the published portion of this opinion, we conclude the trial court should have awarded Elation nominal damages on its NDA claim, as defendants' JNOV motion did not challenge the jury's finding that Shi breached the NDA. In the unpublished portion, we conclude that substantial evidence did not support the jury's finding in Elation's favor on its Settlement Agreement claim, and that section 1717 applies to the claims and cross-claims on the Settlement Agreement, but does not apply to Elation's NDA claim.

Accordingly, we affirm the order granting JNOV as to Elation's Settlement Agreement claim but reverse the order granting JNOV as to Elation's NDA claim. We also vacate the award of attorney fees. The matter is remanded to the trial court for further proceedings.

---

[1]     Further statutory references are to the Civil Code.

2

Shi is a software developer who was employed at Elation from 2005 to 2011.  His duties included building its "Labor Compliance Program" (LCP) software during the early stages and adding new features as its client base expanded.  According to Elation, LCP software helps to automate reporting, monitoring, and compliance with federal and state-specific prevailing wage laws for public works projects.

## A.     Nondisclosure and Confidentiality Agreement

As part of his employment at Elation, Shi signed a NDA.  Under paragraph 3 of the NDA, Shi agreed "to hold all Confidential Information in strict confidence and secrecy and not to disclose to others or to use" the information, and to make "no copies of Confidential Information" except upon Elation's written authorization.  Paragraph 5 of the NDA provided that all copies of such information must be returned upon Elation's request.  The NDA also provided:  "The parties acknowledge and agree that a breach of the provisions of Paragraphs 3 and 5 of this agreement would cause the other party to suffer irreparable damage and could not be adequately remedied by an action of law.  Accordingly, the parties agree that either party shall have the right to seek specific performance of the provisions in Paragraph 3 to enjoin a breach or attempted breach of the provision thereof, such right being in addition to all other rights and remedies that are available to the parties at law, in equity, or otherwise."  The NDA did not contain an attorney fee provision.

---

[2]     We focus our attention on the evidence and factual background relevant to Elation's claims regarding the sufficiency of evidence on its breach of contract claims and the award of attorney fees.

In April 2011, Shi left his employment at Elation and formed a business entity called Efen Bridge.

## B.     Prior Action, Settlement Agreement, and Stipulated Injunction

In August 2011, Elation sued Shi and Efen Bridge (Alameda County Super. Ct. case no. RG11593133), alleging that Efen Bridge was attempting to market software products that were substantially similar, if not identical, to those that were developed, marketed, and sold by Elation. It also alleged that before leaving Elation, Shi replicated its source code on his company-issued laptop and then transferred it using a "Universal Serial Bus" (USB) drive and/or a file transfer protocol program.

Shortly thereafter, the parties entered into the Settlement Agreement to resolve the lawsuit. The Settlement Agreement set forth a three-part process for inspection of Efen Bridge's LCP. First, Elation would review Efen Bridge's LCP as it existed at the time of settlement. If Elation identified any of its alleged trade secrets or confidential information, Efen Bridge could not use that LCP but could create a new LCP from scratch. The Settlement Agreement specified: "It shall not constitute a breach of this agreement if as a result of this inspection process Elation contends that Defendants' LCP includes any of Elation's alleged source code or confidential and proprietary trade secrets or business information." Instead, Elation would keep a copy of Efen Bridge's original LCP on a USB drive, and Efen Bridge and Shi would be required to "delete or destroy all copies" of its original LCP within one day after the inspection.

Second, Elation would be permitted to re-inspect Efen Bridge's LCP once it was completed "to the level of" the original version. Third, upon Efen Bridge's notice of its first sale of the new LCP product to a customer, Elation would be permitted to compare "Defendants' then-working LCP product with

the archived product stored in confidence with Elation's attorney" on the USB drive. The Settlement Agreement again specified: "It shall not constitute a breach of this agreement if as a result of this inspection process Elation contends that Defendants' LCP includes any of Elation's alleged source code or confidential and proprietary trade secrets or business information." Efen Bridge and Shi were required to "delete or destroy" any confidential information or code obtained from Elation by September 26, 2011.

The Settlement Agreement also provided: "Unless otherwise specifically provided for herein, each Party shall be solely responsible for its own costs and legal expenses in connection with the Lawsuit, and any costs or claimed damages allegedly incurred in connection with the transactions and occurrences that are the subject of the Lawsuit, including without limitation any costs or claimed damages incurred before or after commencement of the Lawsuit. Each party shall be solely responsible for its own costs and legal expenses incurred in connection with the dismissal of the Lawsuit, and the negotiation, execution and performance of this Settlement Agreement."

The Settlement Agreement stated that it "constitutes the entire agreement of the Parties with respect to the subject matters referred to herein" and "supersedes" prior agreements, "all of which have become merged and finally integrated into this Settlement Agreement; **provided, however,** that this Settlement Agreement does not supersede the terms of the Nondisclosure and Confidentiality Agreement, dated November 2, 2005, between Plaintiff and Defendant Shi, a copy of which is appended hereto as Exhibit C." (Emphasis in original.) It also included a mutual release provision, which discharged "Defendants' predecessors, successors,

5

assigns . . . from claims . . . arising out of or relating to the transactions or occurrences alleged in the Lawsuit[.]"

Finally, the Settlement Agreement provided that Efen Bridge and Shi would stipulate to the entry of an injunction "held by counsel for Elation and not filed unless and until there is a default in the obligations" outlined in the Settlement Agreement. The stipulated judgment and injunction (Stipulated Injunction) was attached as Exhibit B to the Settlement Agreement and provided that Efen Bridge and Shi would be enjoined from keeping, using, disclosing, or misappropriating Elation's alleged trade secrets. It also provided that Efen Bridge and Shi would be enjoined from keeping, using, disclosing, or misappropriating Elation's alleged confidential and proprietary information "in breach of Defendant Shi's Nondisclosure and Confidentiality Agreement, dated November 2, 2005."

Unlike the NDA and the Settlement Agreement proper, the Stipulated Injunction contained a provision for attorney fee shifting. Specifically, the Stipulated Injunction provided that upon default of their obligations, "Defendants agree to pay Elation all costs, including without limitation attorneys' fees, incurred by Elation in connection with entry and enforcement of this Stipulated Injunction, including without limitation all costs, attorneys' fees and expenses incurred by Elation in connection with any bankruptcy, reorganization, arrangement or other similar proceedings involving Defendant Shi or Efen Bridge which may in any way affect the exercise by Elation of its rights and remedies hereunder. Any and all costs and attorneys' fees incurred by Elation in any action undertaken to obtain relief from the stay of bankruptcy statutes are specifically included in those costs and expenses to be paid by Defendant Shi or Efen Bridge pursuant hereto."

## C.  Complaint and Cross-Complaint in This Action

Several years after the Settlement Agreement was executed, Elation sued Shi and Fenn Bridge, a successor entity to Efen Bridge.  Elation's operative complaint asserted four causes of action:  (1) breach of the NDA (against Shi only); (2) breach of the Settlement Agreement; (3) violation of the California Uniform Trade Secrets Act (against Fenn Bridge only) (§ 3426, et seq.); and (4) declaratory relief.  The Settlement Agreement, including its exhibits, was attached to the complaint.

Elation alleged that in October 2011, it conducted the first inspection contemplated by the Settlement Agreement and identified instances where Shi had copied Elation's software.  Accordingly, Fenn Bridge and Shi were obligated to destroy any and all copies of their original LCP and start again from scratch.  Upon notice that Fenn Bridge had rebuilt its LCP, however, Elation declined its option to conduct the second inspection.  Then, in January 2015, Fenn Bridge provided notice of its first customer sale, triggering the option for Elation to conduct the third inspection.  The parties, however, disagreed about what was required for this inspection:  Fenn Bridge stated it would provide a copy of its LCP on a laptop, but Elation wanted "an actual working version of its product that is being implemented with a customer."

On the breach of contract and misappropriation claims, Elation alleged that Shi and Fenn Bridge had retained and used Elation's confidential information in violation of the NDA and Settlement Agreement, which Fenn Bridge then used to market an LCP system.  It alleged: "Unless and until it is enjoined and restrained by order of this Court, Defendant Fenn Bridge will continue its wrongful conduct in using or disclosing Elation's trade secrets. Unless and until enjoined, the Defendant's wrongful conduct will cause great

7

and irreparable injury to Plaintiff and its business in that it will lose customers to Defendant."

Elation also alleged that Shi and Fenn Bridge had breached the Settlement Agreement by refusing to allow the third inspection of its LCP product "actually sold to a customer and as being implemented by a customer." Elation sought a "judicial determination of its rights and duties" under the Settlement Agreement, specifically that it was "entitled to inspect a working copy of Fenn Bridge's LCP product that was actually sold to and as it is being implemented by a customer."

Fenn Bridge and Shi subsequently filed a cross-complaint against Elation. The operative cross-complaint asserted three causes of action: (1) breach of the Settlement Agreement; (2) fraud—failure to disclose lost evidence; and (3) fraud—false promise. Each of the claims was based on the allegation that Elation had lost "evidence key to performance of the inspection—the USB drive containing the archived copy of the original Fenn Bridge software." It also alleged that Elation had insisted on access to Fenn Bridge's customer information for the third inspection, but was not entitled to such access under the terms of the Settlement Agreement.

The cross-claim for fraud based on failure to disclose was dismissed on summary judgment. The remaining claims and cross-claims proceeded to trial.

## D.    Trial

At trial, Elation's president was asked what he hoped to achieve out of the second lawsuit against Shi and Fenn Bridge. He responded: "Stop it. That's all. Stop it. Make sure you're not using our trade secrets. Because it's a Settlement Agreement. It's a signed contract. And all the terms and

8

conditions needs [*sic*] to be followed through.  And just make sure we enforce that."

Elation's former counsel, who had negotiated the Settlement Agreement, was asked what had been important to Elation to achieve from the Settlement Agreement.  He responded:  "Well, it was important to get Efen Bridge and Joe Shi to stop using the trade secrets.  And for Elation to be able to assure itself down the road that, if Efen Bridge developed another labor compliance program, developed more software that it wanted to sell, that Elation would be given the right to inspect that software to see if it still included any of Elation's secrets."  An email from Shi's former counsel to Elation's former counsel was admitted into evidence, which attached a redlined draft of the Settlement Agreement.  The email stated that Shi's former counsel had made revisions "just to make it clear that the purpose of the agreement is to allow Elation to inspect Efen's current LCP (paragraph 1) and later versions of its LCP (paragraphs 4 and 6), so that Efen can create a new LCP which does not contain Elation's alleged trade secrets."  The redline added the provisions to the Settlement Agreement that "[i]t shall not constitute a breach of this agreement if Elation contends that Defendants' LCP includes any of Elation's alleged source code or confidential and proprietary trade secrets or business information."

Elation's former counsel also testified that the USB drive containing the archived copy of Efen Bridge's original LCP had been lost when he "moved offices from One Lombard to 555 Montgomery."  A letter dated December 19, 2014 and signed by Elation's former counsel was admitted into evidence.  The letterhead reflected the 555 Montgomery address.

Elation's expert witness testified that he conducted a comparison of Elation's LCP system with Fenn Bridge's source code produced in the

9

litigation. He concluded that several of Elation's trade secrets had been misappropriated, and that 30-31 database tables in Fenn Bridge's code appeared to be "derived from the Elation tables," with similar misspellings and use of "awkward" field names that indicated copying.

Shi testified there were 353 tables in his database. He stated it was "possible" that certain tables matched with Elation tables because he created Elation's tables when he worked there, and because both systems used standardized forms from government agencies.

Shi also testified regarding various government contracts that Elation had when he worked there, including a contract with the City of Richmond. The parties stipulated to the following facts: in 2013, Anovo Systems, LLC won a bid to provide the City of Richmond with labor compliance software and services. Elation had also bid on the project. Anovo Systems, LLC did not use Fenn Bridge or Shi's software in the initial bid, but subsequently entered into contracts with Fenn Bridge to carry out the project and used its software for the project starting in 2015. By 2018, Anovo Systems, LLC had paid Fenn Bridge $82,433.35 for work done on the City of Richmond project.

During trial, Elation admitted to liability on the cross-claim for breach of the Settlement Agreement based on its loss of the USB drive, and stipulated to $10,000 in liquidated damages. At the end of trial, the trial court granted Elation's motion for nonsuit on the cross-claim for fraud based on false promise.

In its closing argument, Elation described what it was seeking in the case as "modest." Elation's counsel explained: "The most important part of what we are seeking here is a judgment that Joe Shi had breached the settlement agreement so that we can seek an injunction with the court to stop it, to stop him from using our trade secrets."

Counsel then reviewed the elements for Elation's two contract claims. On the NDA claim, counsel argued that Shi had breached the contract because "he disclosed and used Elation's confidential information" and that Elation was entitled to damages because "but for Joe Shi's breach of the nondisclosure agreement and use of our confidential information, Elation would have received the profits on the Richmond project that Joe did." On the Settlement Agreement claim, counsel noted that the verdict form asked the jury to decide whether Fenn Bridge and Shi had breached the contract because (1) they did something that the contract prohibited them from doing; or (2) they failed to do something that the contract required them to do. Counsel stated: "I guess you could really answer this either way. He failed to delete this code. He prohibited from using (sic) our confidential information. And it required him to submit to the inspection procedure. So he both failed to do something and did something he wasn't supposed to do." Counsel stated that Elation was seeking $40,000 for breach of the Settlement Agreement, "one for each trade secret misappropriated and the $10,000 per violation. That's all we're seeking here." He continued: "The most important thing is that we stop him. We are not seeking obscene amounts of money."

**E.    Verdict**

On Elation's NDA claim, the jury returned a verdict that Shi had breached the contract and harmed Elation, but initially awarded zero damages. After receiving additional instructions on damages, including an instruction on nominal damages, the jury awarded Elation $10,000. On Elation's Settlement Agreement claim, the jury found that defendants had each breached one obligation under the Settlement Agreement by failing to do something it was required to do, but also found that Elation was not harmed by their breaches. The verdict form also included a supplemental

11

question: "Is the act by Tiebiao Shi that you find to have been a breach of the 2005 contract [i.e., the NDA] the same act by Tiebiao Shi that you find to have been a breach of the 2011 contract [i.e., the Settlement Agreement]?" The jury answered, "No."

On the trade secrets claim, the jury did not reach the question of misappropriation because it found that Fenn Bridge was a successor in interest to Efen Bridge.[3]

### F.     Posttrial Motions

Following the jury verdict, Elation filed a motion for permanent injunctive and other relief. Elation argued that the conditions for entry of the parties' Stipulated Injunction, which had been attached to the Settlement Agreement, were met because the jury had determined that Shi violated his NDA obligations and both defendants defaulted on their Settlement Agreement obligations. Based on the evidence at trial, Elation also argued that Fenn Bridge and Shi still possessed Elation's confidential information, and thus "[n]othing short of injunctive relief can protect Elation's interest."

Fenn Bridge and Shi then filed a JNOV motion challenging (1) the jury's findings of harm and damages on Elation's NDA claim; and (2) the jury's finding of breach on Elation's Settlement Agreement claim. The trial court granted the JNOV motion, and accordingly denied Elation's permanent injunction motion. On the NDA claim, the court found there was no evidence showing that, "if not for Defendant's misappropriation, Plaintiff would have

---

[3]     Elation's operative complaint asserted four causes of action: (1) breach of the NDA (against Shi only); (2) breach of the Settlement Agreement (against Shi and Fenn Bridge, a successor entity to Efen Bridge); (3) violation of the California Uniform Trade Secrets Act (against Fenn Bridge only) (§ 3426, et seq.); and (4) declaratory relief. As a successor in interest, Fenn Bridge was covered by the mutual release in the Settlement Agreement.

12

been awarded any contract or made any additional profits. Contrary to Plaintiff's argument in opposition, a jury finding that the City of Richmond would have continued to use Plaintiff's software would rest on nothing but speculation." It also found there was no evidence supporting the $10,000 damages award. On the Settlement Agreement claim, the court found that Elation had "stipulated to its own prior breach" consisting of Elation's loss of the USB drive containing Efen Bridge's original LCP, which was the "exclusive version against which Defendants' code could be compared for any future claims of misappropriation" and that "[t]he promise to maintain the USB drive was a material term of the 2011 settlement—without the drive, the parties' agreed regime for adjudicating future claims of misappropriation became impossible."

Fenn Bridge and Shi subsequently filed a motion for $718,778.85 in attorney fees pursuant to section 1717 and the attorney fee provision in the Stipulated Injunction. The court determined that Fenn Bridge and Shi were the prevailing parties on both the complaint and the cross-complaint, and that section 1717 was applicable as the fees "were incurred in defending against Elation's attempt to enforce the stipulated judgment which was part of the 2011 settlement agreement." Finding that "[a]ll causes of action in the complaint were in actuality different legal theories directed to Elation's singular request to enforce the settlement agreement," the court entered judgment awarding Fenn Bridge and Shi $700,000 in attorney fees.

## DISCUSSION

### A.    JNOV

A motion for JNOV "may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department*

13

*of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  " 'Substantial evidence means such evidence as a reasonable fact trier might accept as adequate to support a conclusion; evidence which has ponderable legal significance, which is reasonable in nature, credible and of solid value.' " (*Jimenez v. Pacific Western Construction Co.* (1986) 185 Cal.App.3d 102, 111–112.)  In deciding whether to grant the motion, the trial court does not weigh the evidence or assess witness credibility.  (*Hansen v. Sunnyside Products, Inc.* (1997) 55 Cal.App.4th 1497, 1510.)  "On appeal, we determine de novo whether there is substantial evidence to support the verdict and whether the moving party is entitled to judgment in its favor as a matter of law." (*Paykar Construction, Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 494.)

Here, Elation argues that the trial court improperly granted JNOV on its two contractual claims—breach of the NDA and breach of the Settlement Agreement.  We address each claim in turn.

### 1.     Breach of the NDA

Elation argues the trial court erred in granting JNOV as to its claim for breach of the NDA for two reasons.  First, Elation contends the jury's finding on harm and award of damages were supported by substantial evidence that Elation "would have retained or regained the contract with the City of Richmond but for Appellee Shi's breach of his 2005 Nondisclosure Agreement."  We are not persuaded.

"Lost profits to an established business may be recovered if their extent and occurrence can be ascertained with reasonable certainty; once their existence has been so established, recovery will not be denied because the amount cannot be shown with mathematical precision." (*Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 161–162.)  In this regard, the plaintiff must demonstrate "a reasonable probability that profits

14

would have been earned except for the defendant's conduct" and "has the burden to produce the best evidence available in the circumstances to attempt to establish a claim for loss of profits." (*S.C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 536 (*S.C. Anderson*).)

To establish its claim for lost profits, Elation relied on the parties' stipulation that in 2013, Anovo Systems, LLC (Anovo) won a bid to provide the City of Richmond with software and services; that Elation had also bid on the project; that Anovo did not use defendants' software in the initial bid, but subsequently entered into contracts with Fenn Bridge to use its software for the project starting in 2015; and that by 2018, Anovo had paid Fenn Bridge $82,433.35 for work done on the project. Notwithstanding these stipulated facts, Elation failed to present evidence demonstrating that "except for" Shi's breach of the NDA, Elation would have received profits from the City of Richmond project. (*S.C. Anderson, supra*, 24 Cal.App.4th at p. 536; see also *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (199) 226 Cal.App.3d 442, 457 ["The only prerequisite to recovery of lost profits is proximate causation: the lost profits must be the natural and direct consequences of the breach"].)

Significantly, Anovo won the initial bid for the project *without* Fenn Bridge or Shi's software. While Anovo eventually used the Fenn Bridge software for the project, there was no evidence showing that Anovo would have been unable to continue servicing the project without Elation's confidential information purportedly contained in the software. Moreover, there was no evidence that Elation would have "regained" the City contract had Anovo been unable to perform. Although "anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability" (*Grupe v. Glick* (1945) 26 Cal.2d

15

680, 693), the evidence that Elation did some unidentified prior work for the City and had bid on the project did not demonstrate with "reasonable reliability" that the City would have gone back to Elation to complete the project. (*Ibid*.) In sum, there was insufficient evidence to support the jury's finding on harm.[4]

Second, Elation contends that even if the jury's findings on harm and damages were not supported by substantial evidence, the jury's finding on *breach*—which defendants did not challenge in their JNOV motion—entitled Elation to nominal damages. Indeed, Elation raised the prospect of nominal damages when the jury returned its initial verdict finding breach but awarding zero damages. The trial court then instructed the jury on nominal damages.

We agree the trial court should have awarded nominal damages in light of the jury's unchallenged finding of breach. Section 3360 provides: "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." California courts have applied section 3360 to conclude that "[a] plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him." (*Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632 (*Sweet*).) Nominal damages may be properly awarded for the violation of a contractual right because "failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages." (*Ibid*.)

In arguing to the contrary, defendants rely on federal cases concluding that breach of contract claims are not actionable in California without a showing of appreciable and actual damage. In particular, they cite *Ruiz v.*

---

[4]     Given our conclusion, we need not address the claimed propriety of the jury's $10,000 damages award based on its finding of harm.

*Gap, Inc.* (9th Cir. 2010) 380 Fed.Appx. 689, 692 (*Ruiz*), which in turn relied on *Aguilera v. Pirelli Armstrong Tire Corp.* (9th Cir. 2000) 223 F.3d 1010 (*Aguilera*). These federal authorities are not controlling (see *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 930, fn. 8), and for the reasons below they do not alter our conclusion.

In *Ruiz*, *supra*, 380 Fed.Appx. 689, the plaintiff argued that the district court erred in granting summary judgment on his breach of contract claim for failure to show actual and appreciable damage. (*Id.* at p. 691.) While referring to *Sweet*, *supra*, 169 Cal.App.2d 630, and acknowledging its holding that "nominal damages are presumed as a matter of law to stem merely from the breach of a contract," the Ninth Circuit ultimately concluded it was bound by *Aguilera's* holding to the contrary. (*Ruiz*, at p. 692.)

In *Aguilera*, *supra*, 223 F.3d 1010, the plaintiffs claimed they were actually damaged by the defendants' breach of certain employment contracts and were injured by " 'fear of future layoff.' " (*Id.* at pp. 1014–1015.) *Aguilera* concluded the plaintiffs had not shown they suffered a legally cognizable harm (*id.* at p. 1015) and affirmed the district court's grant of summary judgment (*id.* at p. 1020). In determining that "[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage," *Aguilera* relied on two California decisions: *Buttram v. Owens–Corning Fiberglas Corp.* (1997) 16 Cal.4th 520 (*Buttram*) and *Patent Scaffolding Co. v. William Simpson Const. Co.* (1967) 256 Cal.App.2d 506, 511 (*Patent Scaffolding*). (*Aguilera*, at p. 1015.) But neither *Buttram* nor *Patent Scaffolding* supports *Aguilera's* conclusion on the point.

Significantly, *Buttram* involved a *tort* action where the defendant sought to limit its liability under certain tort reform measures after the plaintiff had won a products liability judgment for exposure to the

17

defendant's asbestos-containing products. (*Buttram*, *supra*, 16 Cal.4th at p. 524.) In concluding that the applicability of the reform measures depended on the accrual date of the plaintiff's cause of action for damages arising from a latent and progressive disease, *Buttram* observed that "[i]n California, harm or injury to the plaintiff is an essential element of a ripe cause of action in negligence or strict liability." (*Id.* at p. 531, fn. 4.) Inasmuch as *Buttram* was clearly articulating settled principles of actionable harm in the tort context (see *Budd v. Nixen* (1971) 6 Cal.3d 195, 200), the decision provides no meaningful support for *Aguilera*'s understanding and purported application of California contract law. (See *Aguilera*, *supra*, 223 F.3d at p. 1015.) As explained, breach of a contractual duty "is, in itself, a legal wrong that is fully distinct from the actual damages" and nominal damages may be recoverable for such breach. (*Sweet*, *supra*, 169 Cal.App.2d at p. 632; § 3360.)

*Aguilera*'s reliance on *Patent Scaffolding* does not fare materially better. *Patent Scaffolding* was a subrogation case in which three insurers compensated their insured subcontractor for a construction site fire loss and thereafter brought a breach of contract claim in the subcontractor's name against the general contractor. (*Patent Scaffolding*, *supra*, 256 Cal.App.2d at pp. 507–508.) As relevant here, *Patent Scaffolding* focused on the circumstances that the subcontractor had been fully compensated for its fire loss and that any payment of insurance premiums was not incurred as a result of the breach. (*Id.* at p. 511.) Because the subcontractor "suffered no uncompensated detriment caused by [the general contractor's] breach of contract" and could not have successfully sued the general contractor, the court concluded the insurers' breach of contract claim was not actionable. (*Ibid.*)

Notably, neither *Aguilera* nor *Patent Scaffolding* considered the availability of nominal damages in the absence of actual damage. Rather, *Aguilera* examined the requisite showing for actual damages with respect to determining breach, while *Patent Scaffolding* examined the requisite causal connection between breach and actual damages. (*Aguilera, supra,* 223 F.3d at p. 1015; *Patent Scaffolding, supra,* 256 Cal.App.2d at p. 511.) Accordingly, we follow California law as provided in section 3360 and *Sweet, supra,* 169 Cal.App.2d 630, and do not find *Aguilera* or *Ruiz* persuasive on the point.

Moreover, we conclude that the failure to award nominal damages here is sufficient grounds for reversal of the judgment. Such an error is reversible where nominal damages would provide an "absolute entitlement to costs" or "determine some question of permanent right." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406.) Here, Elation concedes that a nominal damages award would only give rise to a *discretionary* award of costs. (Code Civ. Proc. §§ 1032, subd. (a)(4) & 1033, subd. (a).) But the nominal damages award, coupled with the jury's finding on breach of the NDA, could affect Elation's rights under the NDA to equitable relief. As detailed above, the NDA provided that "either party shall have the right to seek specific performance of the provisions in Paragraph 3 to enjoin a breach or attempted breach of the provision thereof, such right being in addition to all other rights and remedies that are available to the parties at law, in equity, or otherwise."

In sum, we conclude that the trial court erred in granting JNOV on Elation's NDA claim. While the court correctly concluded that substantial evidence did not support the jury's finding of harm or $10,000 in damages for that harm, it should have awarded Elation nominal damages on this cause of action. We thus reverse the JNOV order as to Elation's cause of action against Shi for breach of the NDA. Given our conclusion, we also grant

Elation's request for remand to reconsider its motion for permanent injunctive and other relief.

### 2. Breach of Settlement Agreement

Elation argues the trial court erred in granting JNOV on its Settlement Agreement claim because substantial evidence supported the jury's liability finding. The verdict form did not ask the jury to identify the specific breach giving rise to its finding of liability. Elation claims, however, that substantial evidence supports the finding under any of the three possible theories of breach: (1) failure to delete or destroy Elation's confidential information and code by September 26, 2011; (2) failure to delete or destroy defendants' original LCP within one day after the first inspection; and (3) failure to submit to the third inspection.

As to the first two theories on failure to delete or destroy, Elation contends that these theories support the jury's finding because its loss of the USB drive was not material to these breaches and its claim as to these breaches could be adjudicated without the USB drive. We are not persuaded. As a preliminary matter, we reject Elation's argument that the trial court improperly usurped the role of the jury in finding that the loss of the USB drive was material. "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact," but " 'if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law.' " (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278.) Here, the jury was not asked to make any finding of materiality as to Elation's breach. Nevertheless, we conclude the trial court's finding on materiality was proper because reasonable minds could not differ on the issue. (*Brown v. Grimes, supra*, 192 Cal.App.4th at p. 278.)

20

The Settlement Agreement created an iterative process by which defendants could develop new versions of their LCP that did not contain any of Elation's code. Evidence and testimony from counsel who negotiated the Settlement Agreement confirmed that was the agreement's purpose. Specifically, the agreement defined a method for determining whether defendants had made a new version free of Elation's code, i.e., by "compar[ing] Defendants' then-working LCP product with the archived product stored in confidence with Elation's attorney[.]"

In order to allow for defendants to continue rebuilding their LCP, the Settlement Agreement explicitly precluded liability for breach during that process: "It shall not constitute a breach of this agreement if as a result of this inspection process Elation contends that Defendants' LCP includes any of Elation's alleged source code or confidential and proprietary trade secrets or business information." Defendants' obligations to delete or destroy code fell within this iterative process and its related protections against breach while the process was still underway. Moreover, Elation was unable to independently prove any breach of these obligations. Instead, Elation asked the jury to *infer* such breaches based on evidence of the very fact that was to be determined exclusively by the inspection process: defendants' continued use of Elation code in their LCP.

Elation did not dispute it had lost the USB drive, thus breaching its obligation under the Settlement Agreement to hold the drive in confidence. "[A] 'material breach' is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." (23 Williston on Contracts (4th ed. 1990 & 2021 supp.) § 63:3.) Elation's loss of the drive was material because it rendered the

21

completion of the inspection process, as specifically set forth in the Settlement Agreement, impossible.

Nor are we persuaded that Elation was able to present evidence of these breaches through its expert testimony comparing Elation's LCP with Fenn Bridge's litigation produced source code. As the trial court explained, the original code archived on the USB drive was the "exclusive version" against which defendants' subsequent LCP could be compared. Elation's ability to conduct some sort of a code comparison under a different process not contemplated by the Settlement Agreement may have helped to establish its claim for breach of the NDA but did not absolve its breach of the Settlement Agreement.

As to the third theory, Elation contends defendants' failure to submit to the third inspection also supports the jury's finding because there is substantial evidence the failure occurred *before* Elation lost the USB drive. We disagree. Here, the evidence showed that Fenn Bridge provided notice of its first customer sale on January 6, 2015, which triggered the option for Elation to conduct the third inspection. Elation's former counsel testified that the USB drive had been lost when he "moved offices from One Lombard to 555 Montgomery." A letter dated December 19, 2014 and signed by Elation's former counsel included the new 555 Montgomery address. The only reasonable conclusion to be drawn from this evidence was that Elation lost the USB drive before Fenn Bridge and Shi were obligated to submit to the third inspection.[5] We similarly reject Elation's claims that the loss of the

---

[5]     Elation argues that Fenn Bridge and Shi provided notice of its first sale "[o]n or about December 19, 2014." As a preliminary matter, the evidence shows that Elation explicitly rejected an attempt to provide notice on that date, and instead accepted the notice provided on January 6, 2015.

drive was not material to this alleged breach because, as described above, the Settlement Agreement provided that the USB drive was the exclusive means for comparison of defendants' new LCP at the third inspection.

In sum, we conclude the trial court did not err in granting JNOV on Elation's cause of action for breach of the Settlement Agreement.

## B.     Attorney Fees Award

Elation argues the trial court erred in awarding attorney fees to Fenn Bridge and Shi because the requirements for section 1717, allowing the one-way attorney fee provision in the Stipulated Injunction to be applied reciprocally to Fenn Bridge and Shi, were not met here. Elation additionally argues that even if the requirements were met, the claims in this action do not fall within the scope of the attorney fee provision. In any event, Elation contends, section 1717 does not apply to certain claims between the parties, and so those fees should have been apportioned out of the award. We address each argument in turn.

### 1.     Section 1717

Elation contends the attorney fees award must be reversed because the requirements of section 1717 were not met.

" 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) As we must

---

Regardless, even if notice was provided on December 19, 2014, the letterhead from Elation's counsel shows he had already moved offices by that date.

decide whether section 1717's requirements were satisfied here, our review is de novo.

Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." This statute has been interpreted to ensure "full mutuality of remedy" for attorney fee claims, meaning that a party is entitled to fees " 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.)

Section 1717 sets forth three requirements for its application: (1) the contract must "specifically provide[]" for attorney fees incurred to enforce that contract; (2) the action must be "on" the contract; and (3) there must be a "prevailing party" on the contract. (§ 1717, subd. (a).) Here, Elation challenges only the second requirement, i.e., whether the action is "on" the contract. Elation presents two arguments as to why the requirement is not met here.

First, Elation contends that its action was not "on" the Stipulated Injunction because its two contractual claims—breach of the NDA and breach of the Settlement Agreement—did not seek to enforce the Stipulated Injunction. For the purposes of section 1717, a cause of action is "on a contract" if it " 'involves' " the contract, in the sense that it "arises out of, is based upon, or relates to an agreement by seeking to define or interpret its

24

terms or to determine or enforce a party's rights or duties under the agreement." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242 (*Barnhart*).)

We agree with Elation that its NDA claim was not "on" a contract that provided for fees because it sought to enforce Elation's rights under the NDA for injunctive relief. The NDA did not contain an attorney fee provision, and the Settlement Agreement was explicit that it "does not supersede the terms of the Nondisclosure and Confidentiality Agreement."

We reach a different conclusion, however, regarding Elation's Settlement Agreement claim. Elation argues the fee provision in the Stipulated Injunction does not apply to this claim because the Stipulated Injunction was a "separate" document that should not have been construed as "part of" the Settlement Agreement. We disagree. "In determining whether a contract contains an applicable attorney fees provision, courts have 'construe[d] together several documents concerning the same subject and made as part of the same transaction [citations] even though the documents were not executed contemporaneously [citation] and do not refer to each other.'" (*Mountain Air Enterprises, LLC v. Sundowner Towers,* 3 Cal.5th 744, 759 (*Mountain Air*).) As section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

Here, the Settlement Agreement and Stipulated Injunction were executed contemporaneously as part of the same transaction to resolve the original lawsuit. The Settlement Agreement not only attached the Stipulated Injunction as an exhibit, but explicitly incorporated its terms, i.e., Fenn Bridge and Shi agreed to stipulate to the entry of the Stipulated Injunction upon "default [in the] obligations" of the Settlement Agreement. The

25

Stipulated Injunction similarly provided that its entry was based on "that certain contemporaneously executed" Settlement Agreement. Given this language and structure, the trial court properly construed the Stipulated Injunction as "part of" the Settlement Agreement in determining the applicability of section 1717. Accordingly, Elation's Settlement Agreement claim was "on" the contract for the purposes of section 1717.

In sum, the trial court did not err in determining that the requirements of section 1717 were met and the attorney fee provision in the Stipulated Injunction could be applied reciprocally to Fenn Bridge and Shi.

## 2. Scope of the Attorney Fee Provision

Elation argues next that, even if the section 1717 requirements were met, its Settlement Agreement claim does not fall within the scope of the attorney fee provision in the Stipulated Injunction.[6] We review the issue de novo. (*Barnhart*, *supra*, 211 Cal.App.4th at p. 237 [" 'On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law' "].)

The Stipulated Injunction provides for recovery of attorney fees incurred " 'in connection with entry and enforcement of' " its terms. Relying on *Mountain Air*, *supra*, 3 Cal.5th 744, Elation argues its Settlement Agreement claim is not covered by the plain language of that provision. In

---

[6] Despite our conclusion that the trial court properly construed the Stipulated Injunction as part of the Settlement Agreement, we agree with Elation that we still must decide whether its Settlement Agreement claim falls within the scope of the attorney fee provision. Section 1717, subdivision (a), requires an attorney fee provision to "be construed as applying to the *entire* contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (Emphasis added.) That rule does not apply here, as the parties were represented by counsel and that representation was recited in the Settlement Agreement.

26

*Mountain Air*, the seller in a real estate purchase transaction sued the buyers for breach of a repurchase agreement. (*Id.* at pp. 748–749.) The buyers asserted an affirmative defense of novation, arguing that the repurchase agreement had been superseded by the parties' option agreement, which provided for attorney fees incurred " 'because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement.' " (*Id.* at p. 749.) *Mountain Air* looked at the meaning of the relevant phrases, and explained that the phrase "in connection with" was broad. (*Id.* at p. 758.) It then turned to the facts of the case, noting that the action was not " 'brought for the enforcement' of the option agreement" because the agreement created only an option, not an obligation, for the buyers to repurchase the property. (*Id.* at pp. 757–758.) It concluded, however, that the action "necessarily implicated" the option agreement because the parties were forced to litigate the question of which agreement was controlling, and thus the action was brought " 'because of an alleged dispute . . . in connection with' the option agreement." (*Id.* at pp. 758–759.) Finally, *Mountain Air* instructed that "if the facts in future cases warrant it, courts 'should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery.' " (*Id.* at pp. 760–761.)

Unlike the situation in *Mountain Air*, the facts of this case and the theories asserted at trial demonstrate that Elation brought its Settlement Agreement claim for the purpose of entering the Stipulated Injunction. Elation's president testified that he wanted the lawsuit to "stop" Fenn Bridge and Shi and "make sure" they were not using Elation's trade secrets. Elation's counsel reiterated that the "most important" purpose of the action

27

was for "judgment that Joe Shi had breached the settlement agreement so that we can seek an injunction with the court to stop it, to stop him from using our trade secrets." Indeed, that is exactly what Elation sought once it had obtained the jury verdict: It filed a motion for entry of the Stipulated Injunction. Accordingly, we conclude that Elation's Settlement Agreement claim was brought "in connection with entry and enforcement of" the Stipulated Injunction.

Elation's remaining arguments do not alter our conclusion. Elation suggests that the additional phrases in the attorney fee provision related to bankruptcy reflect an intent to limit fees only for "narrow and specific activities surrounding the injunction." We disagree, as the language provides for fees "in connection with entry and enforcement of this Stipulated Injunction, including without limitation all costs, attorneys' fees and expenses incurred by Elation in connection with any bankruptcy, reorganization, arrangement *or other similar proceedings involving Defendant Shi or Efen Bridge which may in any way affect the exercise by Elation of its rights and remedies hereunder*." (Emphasis added.) This phrasing reinforces applicability of the attorney fee provision here, as Elation brought the claim to exercise its rights and remedies under the Stipulated Injunction. (See *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 544 [explaining that provisions for attorney fees "in connection with" property and in proceedings " 'that in any way affect the exercise by Lender of its rights and remedies hereunder' " were relatively broad and "enforceable according to their terms"].)

Elation also argues that its Settlement Agreement claim is more properly considered within the provision that requires each party bear their own fees "incurred in connection with the dismissal of the Lawsuit, and the

28

negotiation, execution and performance of this Settlement Agreement." Specifically, Elation relies on the term "performance" to contend that this provision covers its "allegation of breach (i.e. non-performance)" of the Settlement Agreement. Considering the full text of the provision, as well as " 'the circumstances under which [the Settlement Agreement] was made and the matter to which it relates,' " we decline to adopt such an interpretation. (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.) Here, the Settlement Agreement contemplated the performance of various obligations by the parties, including not only those related to the inspection process but also the provision of certain certifications and the payment of fees by Fenn Bridge and Shi before the closing date. The term "performance" is included with other terms related to the closing of the Settlement Agreement, including its "negotiation" and "execution" as well as the resulting dismissal of the lawsuit. There is nothing to indicate that the parties intended the term to cover a claim to establish defaults by Fenn Bridge and Shi, particularly given the parties' assent to the Stipulated Injunction and its provision for attorney fees.

In sum, we conclude that Elation's Settlement Agreement claim fell within the scope of the attorney fee provision in the Stipulated Injunction.

### 3. Apportionment

Finally, Elation argues that even if Fenn Bridge and Shi were entitled to fees as the prevailing party on the Settlement Agreement claim and cross-claim, the trial court should have apportioned out fees for the other claims. "If an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615.) Accordingly, once a trial court determines that a party is entitled to attorney fees, it may apportion fees incurred in the litigation between (1) the claims on the

contract providing for attorney fees and (2) the other claims. Apportionment "rests within the court's sound discretion." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505.)

Given our conclusion that section 1717 applies only to the Settlement Agreement claim and cross-claim, as well as our reversal of the JNOV order on Elation's NDA claim and remand for the trial court's reconsideration of Elation's motion for permanent injunctive and other relief, we also remand for reconsideration of whether and to what extent fees should be apportioned.

## DISPOSITION

The order granting JNOV is reversed as to Elation's cause of action for breach of the NDA, but affirmed as to Elation's cause of action for breach of the Settlement Agreement. We vacate the judgment insofar as it (1) ordered that Elation recover nothing on its cause of action for breach of the NDA; (2) entered judgment in favor of Fenn Bridge and Tiebiao Shi on Elation's cause of action for breach of the NDA; (3) deemed Fenn Bridge and Tiebiao Shi as the prevailing parties under section 1717 beyond the claim and cross-claim for breach of the Settlement Agreement; and (4) awarded Fenn Bridge and Tiebiao Shi $700,000 in attorney fees. The judgment is otherwise affirmed.

On remand, the trial court should conduct other proceedings consistent with the opinion, including but not limited to: (1) reconsideration of Elation's motion for permanent injunctive and other relief; and (2) reconsideration of whether and to what extent fees should be apportioned. Any subsequent entry of judgment shall include an award of nominal damages to Elation on its cause of action for breach of the NDA.

The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Chou, J.*

A159749, A160823/*Elation Systems, Inc. v. Fenn Bridge*

---

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Elation Systems, Inc. v. Fenn Bridge LLC, et al.
(A159749, A160823)


Trial Court:          Alameda County


Trial Judge:          Hon. Frank Roesch


Attorneys:

Putterman Yu, Philip J. Wang and Traci M. Keith for Plaintiff and Appellant.

Vasquez Benisek & Lindgren, Richard C. Vasquez and Jeffrey T. Lindgren for Defendants and Respondents.